**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| **J.A.S.G.,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **Case No. 4:26-cv-460-CDL-CHW** |
| | : | **28 U.S.C. § 2241** |
| **Warden, STEWART DETENTION CENTER,[1]** | : | |
| | : | |
| **Respondent.** | : | |
| | : | |

**<u>REPORT AND RECOMMENDATION</u>**

Before the Court is Petitioner J.A.S.G.'s application for a writ of habeas relief pursuant to 28 U.S.C. § 2241 (Doc. 1) as well as Respondent's Motion to Dismiss (Doc. 5). For the following reasons it is **RECOMMENDED** that Respondent's Motion to Dismiss (Doc. 5) be **GRANTED** and that Petitioner's application for habeas relief (Doc. 1) be **DISMISSED**.

**BACKGROUND**

Petitioner is a native and citizen of Cuba. (Doc. 5-1 at ¶ 4); *see also* (Doc. 1 at ¶ 1). Petitioner was originally paroled into the United States on April 22, 1962, and obtained

[1] [T]he default rule [for claims under 28 U.S.C. § 2241] is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citations omitted). The Clerk's office is **DIRECTED** to change the docket to reflect the Warden of Stewart Detention Center as the sole appropriately named respondent in this action.

Lawful Permanent Resident status ("LPR") on September 22, 1964. (Doc. 5-1 at ¶ 4). Petitioner has multiple convictions since 1977, including robbery offenses, weapons offenses, and controlled substance offenses. *Id*. at ¶ 5; *see also* (Doc. 5-3). On February 20, 1990, the former Immigration and Naturalization Service ("INS")[2] served Petitioner with an Order to Show Cause charging him with deportability. The 1990 Order to Show Cause alleges that Petitioner is subject to deportation under "SECTION 241(a)(4) of the Immigration and Nationality Act, in that, [Petitioner] at any time after entry ha[s] been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, to wit: Three (3) separate offenses of Robbery, in violation of Florida Statutes 812.13." (Doc. 5-5) (referencing three separate convictions for robbery on July 8, 1988; May 14, 1986; and February 6, 1980).

On April 21, 1993, an Immigration Judge ("IJ") denied Petitioner's application for relief from removal and ordered him removed to Cuba after a hearing took place. (Doc. 5-6); *see also* (Doc. 5-1 at ¶ 7). On September 2, 1998, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal. (Doc. 5-7); *see also* (Doc. 5-1 at ¶ 8). The BIA reasoned that Petitioner "has committed a succession of criminal acts which together establish a pattern of serious criminal misconduct, a negative factor that has not been overcome by his equities." (Doc. 5-7 at 2). Petitioner did not enter Immigration and

---

[2] The Homeland Security Act of 2002 "[a]bolished INS and placed its functions within new Department of Homeland Security (DHS) and the Department of Health and Human Services (DHHS)." Ira J. Kurzban, *Kurzban's Immigration Law Sourcebook* 18 (20th ed. 2026). Within DHS is Immigration and Customs Enforcement ("ICE"), which includes "immigration and customs special agents, detention and deportation officers, immigration litigation, Federal Protective Service employees, and legal advisors." *Id*.

Customs Enforcement/Enforcement Removal Operations ("ICE/ERO") custody again until on or about May 20, 2002, after he was convicted of Robbery and Robbery with Gun or Deadly Weapon. (Doc. 5-1 at ¶ 9). On November 25, 2002, Petitioner was first released on an Order of Supervision ("OSUP"), requiring "[t]hat [Petitioner] appear in person at the time and place specified, upon each and every request of the Service, for identification and for deportation or removal." (Doc. 5-8). On September 16, 2008, ICE/ERO revoked Petitioner's first OSUP because he failed to report. (Doc. 5-9). Petitioner was released again on or about April 30, 2009, under a second OSUP. (Doc. 5-10); *see also* (Doc. 5-1 at ¶ 11). Petitioner's second OSUP notes that ICE/ERO "is unable to obtain a Travel Document at this time." (Doc. 5-10 at 7). Petitioner's most recent conviction in the record took place on September 19, 2012, when Petitioner was convicted in Miami-Dade County, Florida of two counts of Robbery, Strongarm and one count of attempted Robbery, Strongarm pursuant to Fla. Stat. Ann §§ 812.13(2)(C); 777.011; and 777.04. (Doc. 5-4). There is nothing in the record to indicate that Petitioner's second OSUP was affected in any way despite these 2012 convictions.

More than thirteen years later, on January 13, 2026, ICE/ERO revoked Petitioner's second OSUP and took Petitioner into custody because of a "current change in priority," explaining that Petitioner currently has "a detention of foreign nationals for imminent removal from the United States back to [Petitioner's] country of nativity, CUBA or a third country." (Doc. 5-11); *see also* (Doc. 5-1 at ¶ 12). The written notice of Petitioner's second OSUP revocation also informs Petitioner that he "will promptly be afforded an informal

interview at which [he] will be given an opportunity to respond to the reasons for revocation." (Doc. 5-11). On January 21, 2026, Petitioner was transferred to El Paso, Texas, for third-country removal to Mexico. (Doc. 5-1 at ¶ 14). The record does not show that Petitioner was afforded an interview regarding the revocation of his second OSUP before his first transfer to El Paso.

On January 28, 2026, Petitioner was issued a Warning for Failure to Depart after he refused to exit his pod for third-country removal to Mexico.[3] (Doc. 5-12); *see also* (Doc. 5-1 at ¶ 14). Petitioner's Warning for Failure to Depart states that:

> Section 241(a)(c)( [of the INA] provides for an extension of the statutory removal period if the alien refuses, during the removal period, to make application in good faith, for a travel or other document necessary for the alien's removal or departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Id*. at 1.

Petitioner refused to sign the Warning for Failure to Depart. *Id*. at 1-2. On February 6, 2026, ICE/ERO transferred Petitioner back to the Stewart Detention Center in Lumpkin, Georgia. (Doc. 5-1 at ¶ 15).

On March 24, 2026, Petitioner filed his application for habeas relief. (Doc. 1). Petitioner asserts two Claims for Relief: (1) that "Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment;" and (2) that "Petitioner's detention is

[3] The Court notes that there is only a fifteen (15) day gap between the date ICE/ERO took Petitioner into custody and the date that Petitioner was issued a Warning for Failure to Depart to Mexico, a third country.

not authorized by the Immigration and Nationality Act and is unlawful." *Id*. at ¶¶ 40-41. Petitioner appears to assert both a substantive and procedural Due Process Claim. *Id*. at ¶¶ 21-24 (alleging that Petitioner's detention does not bear a reasonable relationship to its regulatory purposes); *see also id*. at ¶ 28 (alleging that Petitioner did not receive notice or opportunity to be heard when his OSUP was revoked). Petitioner's statutory claim under the INA relies on both 8 U.S.C. § 1231 and the Supreme Court of the United States' decision in *Zadvydas v. Davis*. 533 U.S. 678 (2001). Petitioner uses these claims to request his release and put him back on an OSUP. (Doc. 1 at ¶ 42).

On March 25, 2026, ICE/ERO transferred Petitioner to El Paso a second time, in another attempt to execute third-country removal to Mexico. (Doc. 5-1 at ¶ 16). On April 8, 2026, ICE/ERO took Petitioner back to the Stewart Detention Center in Lumpkin, Georgia. *Id*. The record does not specify why Petitioner was transferred from El Paso to the Stewart Detention Center in Lumpkin, Georgia a second time. On April 14, 2026, ICE/ERO made the first attempt in the record to interview Petitioner about his OSUP revocation at the Stewart Detention Center in Lumpkin, Georgia. (Doc. 5-13). Petitioner did not provide any written statement or documents. *Id*. Instead, Petitioner refused to speak with ICE/ERO. (Doc. 5-1 at ¶ 17). On April 14, 2026, Petitioner was served with a Notice of Failure to Comply Pursuant to 8 CFR 241.4(g). (Doc. 5-14); *see also* (Doc. 5-1 at ¶ 17). Petitioner's Notice of Failure to Comply Pursuant to 8 CFR 241.4(g) provides that Petitioner is "to remain in ICE custody until [Petitioner] demonstrate[s] that [he is] making reasonable efforts to comply with the order of removal and that [he is] cooperating with

ICE's efforts to remove [him.]" (Doc. 5-14 at 1). Petitioner's Notice of Failure to Comply Pursuant to 8 CFR 241.4(g) also clearly states:

> that continued willful failure or refusal on [Petitioner's] part to make timely application in good faith for travel or other documents necessary for [Petitioner's] departure, or any conspiracy or actions to prevent [Petitioner's] removal or obstruct the issuance of a travel document, may subject [Petitioner] to criminal prosecution under 8 USC 1253(a).

*Id*.

Petitioner refused to sign the Notice of Failure to Comply Pursuant to 8 CFR 241.4(g). *Id*. at 2.

**DISCUSSION**

Respondent raises both jurisdictional and substantive arguments to support a dismissal of Petitioner's habeas application. While there is no jurisdiction to review ICE/ERO's discretionary decision to revoke Petitioner's OSUP, jurisdiction does exist to review whether ICE/ERO adhered to the proper procedures for an OSUP revocation. The record indicates that ICE/ERO followed the OSUP revocation procedures set forth in 8 C.F.R. §§ 241.4 and 241.13 by providing Petitioner with a written OSUP revocation notice as well as a Warning for Failure to Depart, Notice of Failure to Comply Pursuant to 241.4(g), and an interview on April 14, 2026. (Doc. 5-11); *see also* (Doc. 5-12); (Doc. 5-14). As to the substance of Petitioner's claim, any claim under 8 U.S.C. § 1231 and *Zadvydas* also fails because there is a final order of removal in place, and Petitioner filed his Petition less than six months after his detention began in ICE/ERO custody.

**I. Jurisdictional Challenge**

This Court has no jurisdiction to review the revocation of Petitioner's OSUP. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). In other words, this Court may only hear a case over which it has subject matter jurisdiction. *See id*. There are generally three ways a party may establish subject matter jurisdiction in federal court: "(1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332." *Hallett v. Ohio*, 711 F. App'x 949, 950 (11th Cir. 2017) (per curiam) (citation omitted). "[T]he party invoking the court's jurisdiction bears the burden of proving the existence of federal jurisdiction," and if "the district court lacks subject matter jurisdiction, it has no power to render a judgment on the merits and should dismiss the complaint. . ." *Id*.

The Immigration and Nationality Act ("INA"), at 8 U.S.C. § 1252(a)(2)(B), provides for the judicial review of orders of removal. Section 1252(a)(2)(B)(ii) states that

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney

> General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

Similarly, 8 U.S.C. § 1252(g) provides:

> except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter

8 U.S.C. § 1252(g).

Section 1252(g) is "narrow[ly] read[]" so that it blocks courts from exercising jurisdiction over only "three discrete actions[: the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999) (quoting Section 1252(g)). "Section 1252(g) deprives the Court of authority to exercise 'subject-matter jurisdiction over Respondent['s] decision to revoke the OSUP, but not [ICE's] purported failure to comply with their own proceedings in doing so." *P.N.B. v. Warden, Stewart Det. Ctr.,* No. 4:25-CV-515-CDL-CHW, Dkt. No. 16 *6-7 (M.D. Ga. Mar. 25, 2026), report and recommendation adopted, (finding jurisdiction to review whether adequate process was followed in revoking petitioner's OSUP); *see also Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025) (explaining that "[t]he decision to revoke Petitioner's OSUP, for the stated purpose of executing his removal order, clearly falls under the purview of

[Section] 1252(g)”). Accordingly, any challenge to the discretionary decision to revoke Petitioner’s OSUP should be dismissed for lack of jurisdiction.

**II. Procedural Due Process Challenge to OSUP Revocation – Moot**

Unlike the discretionary decision to revoke an OSUP, “[t]he Court does have jurisdiction to review whether ICE adhered to its own policies and procedures in its revoking Petitioner’s OSUP.” *H.S. v. Warden, Stewart Det. Ctr.*, No. 4:26-CV-131-CHW, 2026 WL 1811463 at 4 (M.D. Ga. Apr. 22, 2026) (report and recommendation adopted sub nom. H.S. v. Streeval, No. 4:26-CV-131 (CDL), 2026 WL 1809764) (M.D. Ga. June 23, 2026)); *see also Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F. 3d 1255, 1262 (11th Cir. 2014); *see Barrios* 2025 WL 2280485, at *5; *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 150—55 (W.D.N.Y. 2025); *Zhu v. Genalo*, No. 1:25-CV-06523 (JLR), 2025 WL 2452352, at 3 – 4 (S.D.N.Y. Aug. 26, 2025). As such, neither Sections 1252(g) or 1252(a)(2)(B)(ii) bar Petitioner’s challenge to the manner in which ICE effected the revocation of his OSUP, to the extent Petitioner asserts the revocation was done without adequate process and in violation of ICE’s own regulations. “The decision to revoke Petitioner’s OSUP, for the stated purpose of executing his removal order, clearly falls under the purview of [Section] 1252(g).” *Barrios*, 2025 WL 2280485, at *5.

Petitioner asserts his procedural due process claim by alleging:

> that Respondents have revoked Petitioner’s OSUP without notice or an opportunity to be heard, they violated the statute and the applicable

> regulations – 8 C.F.R. §§ 241.4(1)[4] and 241.13(i) – by failing to provide Petitioner with a particularized notice of the reason(s) of the revocation of his release or an opportunity to respond to the allegations contained therein.

(Doc. 1 at ¶ 28).

Both 8 C.F.R. §§ 241.4(l)(1) and 241.13(i) require notice and prompt interview after OSUP revocation. 8 C.F.R. § 241(l)(1); *cf.* 8 C.F.R. § 241.13(i)(3). 8 C.F.R. § 241.4(l)(1) requires an alien subject to an OSUP revocation to "be notified of the reasons for revocation of his or her release or parole. . .[and] an initial informal interview *promptly* after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1) (emphasis added). 8 C.F.R, § 241.13(i) also requires that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release. . .[and] conduct an initial informal interview *promptly* after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3) (emphasis added).

In *H.S. v. Warden, Stewart Det. Ctr*., this Court found that ICE did not violate § 241.4. No. 4:26-CV-131-CDL-CHW, 2026 WL 1811463 (M.D. Ga. Aprl 22, 2026), (report and recommendation adopted sub. nom., *H.S. v. Streeval*, No. 4:26-CV-131 (CDL), 2026 WL 1809764 (M.D. Ga. June 23, 2026)). ICE/ERO detained H.S. in December 2025, ICE/ERO revoked his OSUP in December 2025, and H.S. was interviewed in January 2026. *Id*. at 1, 5. On *P.N.B. v, Warden, Stewart Det. Ctr*., this Court also found that

[4] Presumably, Petitioner intended to reference 8 C.F.R. § 241.4(l)(1) since there is no 8 C.F.R. § 241.4(1) and 8 C.F.R. § 241.4(l)(1) concerns notice and interview procedures after an OSUP revocation.

ICE/ERO did not violate § 241.4 No. 4:25-CV-515-CDL-CHW, 2026 WL 1671444 (M.D. Ga. June 9, 2026). P.N.B. entered ICE custody on December 22, 2025, P.N.B. 's OSUP was revoked on January 5, 2026, with a "refused to sign" marker for P.N.B., and ICE interviewed P.N.B. on January 5, 2026. Both H.S. and P.N.B. have roughly a month time-frame between the petitioner's detainment, OSUP revocation notice, and interview.

Petitioner was not afforded the same due process. Petitioner did receive prompt written notice of his OSUP revocation on the same date he went into custody: January 13, 2026. (Doc. 5-11). However, Petitioner did not receive an opportunity to be heard via an informal interview until ninety-one (91) days after he was detained on April 14, 2026. (Doc. 5-14). Petitioner's informal interview was not afforded to him "promptly" under § 241.4 or § 241.13, given ICE'ERO's actions throughout the ninety-on (91) day time frame. ICE/ERO transferred Petitioner to El Paso, Texas twice between January 13, 2026, and April 14, 2026. (Doc. 5-1 at ¶ 14); *see also* (Doc. 5-1 at ¶ 16). ICE/ERO also prepared and served Petitioner with two written notices of failure to cooperate throughout this 91-day time-frame. (Doc. 5-12); *see also* (Doc. 5-14). ICE/ERO failed to meet the requirements set forth in § 241.4 and § 241.13 because ICE/ERO had ample opportunity to do so throughout Petitioner's detainment and twice-attempted third-country removal to Mexico. Nevertheless, Petitioner was eventually afforded the remedy available to him: an informal

interview to contest his OSUP revocation.[5] As such, Petitioner's procedural due process violation should be dismissed.

**III. Statutory Challenge: 8 U.S.C. § 1231 and *Zadvydas***

Petitioner's remaining allegation is a post-final order prolonged detention claim under 8 U.S.C. § 1231 and *Zadvydas*. 533 U.S. 678. Generally, ". . . the Attorney General shall remove the alien from the United States within a period of 90 days" after an alien is ordered removed. 8 U.S.C. § 1231(a)(1)(A). The ninety-day removal period starts on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of an alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id*. at 1231(a)(1)(B)(i)-(iii).

While this ninety-day removal period takes place, ". . . the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title." 8 U.S.C. § 1231 (a)(2)(A). An alien may be detained beyond the ninety-day removal period if said

[5] This Court has reasoned on numerous occasions that the appropriate remedy would be that ICE/ERO afford Petitioner notice and an interview, not release from custody. *See H.S.*, 2026 WL 1811463, at *5 n.3; *see also R.O.T. v. Streeval*, No. 4:26-CV-366 (CDL) (M.D. Ga. Sept. 25, 2026).

alien is ". . . ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . ." 8 U.S.C. § 1231(a)(6). The Supreme Court of the United States further interpreted 8 U.S.C. § 1231(a)(6) to include detention beyond the ninety-day period if it is "reasonably necessary" to effectuate removal in *Zadvydas*. 533 U.S. 678; *see also* 8 U.S.C. § 1231(a)(6).

The Court recognized six months as a presumptively reasonable time period to allow the government to accomplish removal under 8 U.S.C. § 1231(a)(6). *Zadvydas*, 533 U.S. at 701. The Eleventh Circuit has explained that a *Zadvydas* claim requires a two-part showing by the petitioner: "…an alien must show that: (1) he has been detained for more than six months following the final order of removal and (2) there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Vaz v. Skinner*, 634 F. App'x 778 (11th Cir. 2015); (*relying on Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir.2002)). Once the petitioner has met his burden to show the two *Zadvydas* prongs, the burden shifts to the respondent to rebut that showing. *Zadvydas*, 533 U.S. at 701.

Petitioner's initial burden to show that he has been detained more than six months (i.e. *Zadvydas* prong one) is strictly construed to "…serve as a gatekeeping function to ensure that federal courts are not unnecessarily weighed down with hasty complaints by impatient illegal aliens who seek premature release back into American communities."

*Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1364 (N.D. Ga. 2002). The United States Courts for the Middle District of Georgia have consistently held that a petitioner's detention period does not begin until he or she is in ICE custody after serving his or her criminal prison sentence. *Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42-CDL, 2018 WL 1321576, at *4 (M.D. Ga. Mar. 14, 2018) ("A strong argument exists that the *Zadvydas* removal period did not even begin until . . . Petitioner was returned to ICE custody after serving his criminal prison sentence."); *see also M.K. v. Warden, Stewart Det. Ctr.*, No. 4:23-cv-136-CDL-MSH (M.D. Ga. filed Oct. 19, 2023), (report and recommendation adopted, No. 4:23-cv-136-CDL-MSH (M.D. Ga. filed Dec. 1, 2023))(reasoning that "[f]inding Petitioner's current detention presumptively unreasonable because of a period of detention occurring over eleven years ago would effectively eviscerate § 1231(a)'s purpose of allowing the Government time to arrange for an alien's removal, including contacting foreign consulates and obtaining necessary travel documents"); *J.A.S. v. Warden, Stewart Det. Ctr.*, No. 4:25-cv-244-CDL-CHW (M.D. Ga. filed Oct. 27, 2025), report and recommendation adopted, No. 4:25-cv-244-CDL-CHW (M.D. Ga. filed Dec. 31, 2025) (finding that Petitioner's Motion to Dismiss was premature because Petitioner failed to prove that he was detained for more than six months from the time of detainment to the time of filing his petition).

In this case, Petitioner entered ICE/ERO custody on January 13, 2026. (Doc. 5-1 at ¶ 12). Petitioner filed his habeas petition only seventy (70) days later on March 24, 2026. (Doc. 1). Petitioner has failed to show that a six-month reasonable time period elapsed from the start date of his detention to the filing of his habeas application. (Doc. 5-1 at ¶ 12); *see*

*also* (Doc. 1). Although Petitioner's detention has now passed the six-month presumptively reasonable time frame, and a Section 2241 petition filed today or tomorrow would not be dismissed as premature, the Eleventh Circuit has made it clear that the "six-month period… must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*." *Akinwale*, 287 F.3d at 1052 (affirming "dismissal without prejudicing [the petitioner's] ability to file a new § 2241 petition in the future that may seek to state a claim upon which habeas relief can be granted"). Petitioner is not prohibited from filing a subsequent petition, but case law indicates no alternative to dismissing his current petition as premature. Therefore, Petitioner fails to meet his burden of proof under the first *Zadvydas* prong to show that he has been detained over six months from the time of detainment to the time of filing his Petition.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that Respondent's Motion to Dismiss (Doc. 5) be **GRANTED** and that Petitioner's application for habeas corpus relief (Doc. 1) be **DISMISSED**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make

a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 29th day of September, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge